UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
:
:
IN RE CBS BROADCASTING INC., : Miscellaneous Case No. 20-mc-739
:
       Non-Party Movant. : Underlying Litigation:
: *In re Watts Coordinated Pretrial*
: *Proceedings*
: Case No. 19-cv-1717
: United District Court for the Northern
: District of Illinois
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## NON-PARTY CBS BROADCASTING INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO QUASH SUBPOENA *DUCES TECUM*

BALLARD SPAHR LLP
Jay Ward Brown
Mara Gassmann (*pro hac vice* forthcoming)
1675 Broadway, 19th Floor
New York, NY 10019
Phone: (212) 850-6119
Fax: (212) 223-1942
brownjay@ballardspahr.com
gassmannm@ballardspahr.com

*Counsel for Non-Party Movant CBS Broadcasting Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .........................................................................................................................2

A. A POLICE WHISTLEBLOWER, AN OFFICER'S CONVICTION, AND EXONERATION OF INNOCENT CITIZENS...................................................................2

B. THE CBS NEWS BROADCAST ...........................................................................4

C. THE UNDERLYING CONSOLIDATED PROCEEDINGS .................................6

D. THE SUBPOENA ....................................................................................................6

ARGUMENT ...............................................................................................................................7

I. THE SUBPOENA SHOULD BE QUASHED BECAUSE THE DEFENDANT POLICE OFFICERS CANNOT OVERCOME THE REPORTER'S PRIVILEGE RECOGNIZED BY THE SECOND CIRCUIT ...................7

 A. The Defendant Police Officers Cannot Show That The Newsgathering Information Is Likely Relevant To A "Significant Issue" .......................................9

 B. The Defendant Police Officers Have Not Exhausted Alternative Sources For The Information ................................................................................10

II. THE SUBPOENA IS PROPERLY QUASHED AS SEEKING DISCOVERY THAT IS UNNECESSARY, CUMULATIVE AND BURDENSOME............................12

CONCLUSION..........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**  Page(s)

*Alcon Vision, LLC v. Allied Vision Grp.*,
 2019 U.S. Dist. LEXIS 152073 (S.D.N.Y. Sept. 6, 2019) ...................................................... 14

*Baker v. F & F Inv.*,
 470 F.2d 778 (2d Cir. 1972) ................................................................................................ 2, 7

*In re Behar*,
 779 F. Supp. 273 (S.D.N.Y. 1991) .......................................................................................... 11

*Blum v. Schlegel*,
 150 F.R.D. 42 (W.D.N.Y. 1993) ............................................................................................. 11

*Bond v. Utreras*,
 2006 U.S. Dist. LEXIS 46279 (N.D. Ill. June 27, 2006) ......................................................... 14

*Carey v. Hume*,
 492 F.2d 631 (D.C. Cir. 1974) ............................................................................................... 11

*Concord Boat Corp. v. Brunswick Corp.*,
 169 F.R.D. 44 (S.D.N.Y. 1996) ......................................................................................... 12, 13

*In re Consumers Union of U.S., Inc.*,
 495 F. Supp. 582 (S.D.N.Y. 1980) ............................................................................................ 8

*Gonzales v. NBC*,
 194 F.3d 29 (2d Cir. 1998) ..................................................................................... 7, 8, 9, 10

*Keebler v. Rath*,
 405 F. App'x 517 (2d Cir. 2010) ............................................................................................ 13

*LaRouche v. NBC*,
 780 F.2d 1134 (4th Cir. 1986) ............................................................................................... 11

*Lee v. DOJ*,
 413 F.3d 53 (D.C. Cir. 2005) ................................................................................................. 12

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
 928 F. Supp. 2d 748 (S.D.N.Y. 2013) ..................................................................................... 11

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
 991 F. Supp. 2d 464 (S.D.N.Y. 2013) ................................................................................. 9, 10

*Morelli v. Alters*,
 2020 U.S. Dist. LEXIS 207362 (S.D.N.Y. Nov. 5, 2020) ........................................... 10, 13, 14

*In re Nat. Gas Commodities Litig.*,
 235 F.R.D. 241 (S.D.N.Y. 2006) ...................................................................................7

*In re NBC*,
 79 F.3d 346 (2d Cir. 1996) ...................................................................................10, 11

*New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*,
 2014 U.S. Dist. LEXIS 55417 (S.D.N.Y. 2014) ...........................................9, 10, 11

*Nidec Corp. v. Victor Co. of Japan*,
 249 F.R.D. 575 (N.D. Cal. 2007) ...................................................................................14

*Pan Am Corp. v. Delta Air Lines, Inc.*,
 161 B.R. 577 (S.D.N.Y. 1993) ...................................................................................11

*Persky v. Yeshiva Univ.*,
 2002 U.S. Dist. LEXIS 23740 (S.D.N.Y. Dec. 10, 2002) .........................................11

*In re Petroleum Prods. Antitrust Litig.*,
 680 F.2d 5 (2d Cir. 1982) ...................................................................................7, 11

*Price v. Time, Inc.*,
 416 F.3d 1327 (11th Cir. 2005) ...................................................................................11

*Schoolcraft v. City of N.Y.*,
 2014 U.S. Dist. LEXIS 56033 (S.D.N.Y. April 18, 2014) .........................................9

*Shoen v. Shoen*,
 5 F.3d 1289 (9th Cir. 1993) ...................................................................................11

*Sikelianos v. City of N.Y.*,
 2008 U.S. Dist. LEXIS 47560 (S.D.N.Y. June 18, 2008) .........................................8, 10

*In re Subpoena to Jeffrey Goldberg*,
 693 F. Supp. 2d 81 (D.D.C. 2010) ...................................................................................14

*United States v. Burke*,
 700 F.2d 70 (2d Cir. 1983) ...................................................................................11

*United States v. Marcos*,
 1990 U.S. Dist. LEXIS 6541 (S.D.N.Y. June 1, 1990) .........................................7

*von Bulow v. von Bulow*,
 811 F.2d 136 (2d Cir. 1987) ...................................................................................8

**Statutes & Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................1, 14

Fed. R. Civ. P. 45 .................................................................................................................1, 12

Fed. R. Evid. 503 .........................................................................................................................7

N.Y. Civ. Rights Law § 79-h(c) ...................................................................................................7

U.S. Const. amend. I ................................................................................................................7, 8

Pursuant to Federal Rules of Civil Procedure 45(d)(3)(A)(iii)-(iv) and 26(c), CBS Broadcasting Inc. submits this memorandum of law in support of its motion to quash the non-party subpoena *duces tecum* issued by the Defendant Chicago Police Officers ("Defendant Police Officers"). That subpoena seeks from a New York news organization disclosure of its privileged newsgathering materials for use in civil lawsuits in the Northern District of Illinois, *In re Watts Coordinated Pretrial Proceedings* ("*In re Watts*"), No. 19-cv-1717 (N.D. Ill. consolidated Mar. 12, 2019).[1]

**PRELIMINARY STATEMENT**

The subpoena to CBS News should be quashed because it seeks the disclosure of protected newsgathering materials. Settled constitutional and common law privileges in this Circuit bar the compelled disclosure of a reporter's newsgathering materials in civil litigation unless the issuing party carries its burden of showing the information sought is likely to be significant to an issue in the case and that the information is not reasonably available from other sources. Neither of these requirements is satisfied here.

Instead, the Defendant Police Officers cannot articulate any basis for why they need the CBS News materials listed in their request—essentially every bit of newsgathering material relating to a news report about a topic of the utmost public concern. Moreover, the Defendant Police Officers seek compelled disclosure from CBS News before having sought it from other readily available sources—including parties to the underlying lawsuit. Indeed, they have not deposed the dozens of plaintiffs in the underlying litigation—among other material witnesses. In fact, more than a year of fact discovery remains in the consolidated cases.

This approach to compelled disclosure of newsgathering material is directly contrary to

---

[1] The Defendant Police Officers who issued this subpoena are a group of 18 officers jointly represented by counsel in the Coordinated Proceedings.

public policy and to the law of this Circuit. As the Second Circuit said nearly fifty years ago: "It is axiomatic, and a principle fundamental to our constitutional way of life, that where the press remains free so too will a people remain free." *Baker v. F & F Inv.*, 470 F.2d 778, 785 (2d Cir. 1972). The very purpose of the reporter's privilege is to promote the flow of newsworthy information to the public, and the public has a particularly strong interest in protecting the flow of information on key matters of public concern—such as wrongdoing in one of the country's largest police departments.

Because the subpoena violates the spirit and law of this Circuit's reporter's privilege, and because Defendant Police Officers cannot make the requisite showing under this Circuit's binding precedent, this Court should quash the subpoena.

## BACKGROUND

**A.   A POLICE WHISTLEBLOWER, AN OFFICER'S CONVICTION, AND EXONERATION OF INNOCENT CITIZENS**

The civil rights litigation in which the Defendant Police Officers issued this subpoena involves events at the forefront of the debate over Chicago policing since the 2012 arrest of Sergeant Ronald Watts. Watts was a tactical officer and supervisor assigned to combat drugs and crime in a district of Chicago. That district included large and poverty-stricken public housing developments. After years of operating what was described as a protection racket, designed to shield drug operations that paid for protection, target their competition, and shake down small-time dealers, Watts and one of the officers in his unit, Kallatt Mohammed, were caught by an FBI informant stealing drug proceeds. Decl. of Jay Ward Brown ("Brown Decl."), Exs. 3, 4; *see* Compl., *United States v. Watts*, No. 12-cr-00087 (N.D. Ill. Feb. 6, 2012) (Dkt. 1).

One police officer who had served in Watts' unit and been mentored by him, Shannon Spalding, learned what Watts was doing and tried to blow the whistle. Brown Decl., Ex. 3.

Spalding and her partner alleged in a federal whistleblower lawsuit, filed in November 2012, that they had been informing Chicago Police Department supervisors about Watts' misconduct—specifically, shaking down and framing of innocent citizens—for a decade. *Id.*; *see also* Compl., S*palding v. City of Chi.*, No. 12-cv-8777 (N.D. Ill. Nov. 1, 2012) (Dkt. 1). According to them, Spalding and her partner became disillusioned at the lack of action, eventually going to the FBI and serving as undercover informants for five years until, they allege, they were outed as "rats" by more senior members of the Department. Brown Decl., Ex. 3. They further alleged that they were targeted for retaliation within the Department. *Id.*; *see also* Tr. of S. Spalding Dep., *Spalding*, *supra*, https://www.documentcloud.org/documents/2842759-Spalding-Deposition.html; *id.*, Tr. of D. Echeverria Dep., https://www.documentcloud.org/documents/2842751-Echeverria-Deposition.html.

The Watts case and other similar misconduct prompted a grim public acknowledgement from Mayor Rahm Emanual. Brown Decl., Ex. 5. Emanuel recognized the "code of silence" plaguing the Department, which he described as "the tendency to ignore, deny, or in some cases cover up the bad actions of a colleague or colleagues." *Id.* Judge Gary Feinerman, who presided over Spalding's whistleblower case, ruled that Emanuel could be called to testify at trial about the meaning behind his remarks. With respect to Spalding and her partner, the Judge characterized their allegations as "purport[ing] to show extraordinarily serious retaliatory misconduct by officers at nearly all levels of the CPD hierarchy." Brown Decl., Ex. 3. On the eve of trial, the City of Chicago settled the case with Spalding and her partner for $2 million. *Id.*

Meanwhile, due to the exhaustive work of The Exoneration Project, persons wrongfully prosecuted and convicted due to Watts' criminal schemes had their sentences vacated and received certificates of exoneration. Many shared their stories publicly. *See* Decl. of Joshua

3

Gaynor ("Gaynor Decl.") ¶¶ 10-11; Brown Decl., Ex. 4.² Spalding, too, shared her story widely. Gaynor Decl. ¶ 10, 12; Brown Decl., Ex. 4. She gave numerous media interviews about her experience.³ She spoke to the public directly via Twitter and her own website about the perils and systemic pressures associated with police misconduct—and continues to do so—and even delivered a TEDx talk recounting her experience.⁴ And, of course, she gave sworn deposition sworn testimony in her whistleblower case. *See* supra 3. The 400-page transcript of that hours-long deposition is publicly available for anyone to read. *Id.*

---

² *See also, e.g.*, *A Stain on the City': 63 People's Convictions Tossed in Chicago Police Scandal*, N.Y. Times (Feb. 13, 2019), https://www.nytimes.com/2019/02/13/us/chicago-exonerations-drug-sentences.html; *15 Men Cleared in First-Ever Mass Exoneration in Cook County*, WTTW (Nov. 16, 2017), https://news.wttw.com/2017/11/16/15-men-cleared-first-ever-mass-exoneration-cook-county; *Dozens of convictions tied to a corrupt Chicago cop are being tossed, with more expected*, WQAD8 (Feb. 11, 2019), https://www.wqad.com/article/news/crime/dozens-of-convictions-tied-to-a-corrupt-chicago-cop-are-being-tossed-with-more-expected/526-09c46a04-7e1b-4e88-b7f9-05ba49a9b7c4; *Prosecutors investigating if corrupt Chicago cop tainted other convictions*, Capital Gazette (Feb. 27, 2017), https://www.capitalgazette.com/ct-states-attorney-review-chicago-police-corruption-met-20170227-story.html.

³ In addition to speaking to the Intercept, The New Yorker, and CBS News, Spalding has given many interviews. *See* Documentary, *Crossing The Thin Blue Line*, CBC (Dec. 5, 2016), https://youtu.be/Esrit_NM9ns; *Years Later, Officer Says She Still Faces Backlash From 'Code of Silence' Lawsuit*, NBCChicago.com (Oct. 11, 2016), https://www.nbcchicago.com/news/local/years-later-officer-still-faces-backlash-from-code-of-silence-lawsuit/51368/#:~:text=It%20has%20been%20years%20since,said%20she's%20still%20facing%20backlash; *Chicago Police Whistleblower: 'I Won't Remain Silent Ever Again'*, WBEZ (Oct. 19, 2016), https://www.wbez.org/stories/chicago-police-whistleblower-i-wont-remain-silent-ever-again/00f54ade-2d05-4c28-8f89-adb192744f46; *Chicago cop Shannon Spalding had no idea how bad her lawsuit against Chicago would "ruin her life"*, WGNRadio.com (June 1, 2016), https://wgnradio.com/roe-conn/chicago-cop-shannon-spalding-had-no-idea-how-bad-her-lawsuit-against-chicago-would-ruin-her-life/; *see also Codes of Silence & Journalism's Obligations*, ProPublica (Oct. 17, 2016), https://www.propublica.org/podcast/codes-of-silence-and-journalisms-obligations.

⁴ Spalding's 2018 TEDx talk was titled Why I Broke the Code of Silence, https://www.youtube.com/watch?v=2YOKC-cmy7U (last visited 12/9/2020).

## B. THE CBS NEWS BROADCAST

In September 2018, CBS News producer Joshua Gaynor began investigating the events that led to the Watts prosecution and Spalding's whistleblower case for the *48 Hours* special documentary series "Whistleblower." Gaynor Decl. ¶ 13. "Whistleblower," hosted by attorney, former judge, and former police officer Alex Ferrer, recounts newsworthy events surrounding illegal or unethical conduct by people, corporations, government, and other institutions, and the persons who exposed that wrongdoing. Brown Decl. ¶ 3. Each approximately 40-minute report covers a different such person who acted as a whistleblower. *Id.*

Gaynor first became aware of Watts' wrongdoing after reading a widely noted four-part news series about Spalding called "Code of Silence" published in 2016. Gaynor Decl. ¶ 10. He later reviewed additional news reporting about Watts, the Chicago Police Department, and related criminal and civil cases. *Id.* ¶¶ 10-13. For approximately nine months, Gaynor and other journalists at CBS News researched, reported, and interviewed sources. *Id.* ¶ 13. They eventually secured a sit-down interview with Spalding, conducted by Ferrer in New York. *Id.* ¶ 14. They also interviewed attorney Joshua Tepfer of the University of Chicago School of Law's Exoneration Project, which has represented nearly 100 persons to date whose cases involved wrongdoing by Watts and who had obtained or were seeking exoneration. *Id.* And they spoke to Clarissa Glenn Baker, the subject of a 2018 New Yorker investigation titled "Framed," and other victims of Watts. *Id.* ¶¶ 11, 14.

While the report focuses on the misconduct of Watts and his partner, it is not an indictment of all police officers. On the contrary, in her on-camera interview with CBS News, Spalding states that the majority of police officers are in it for the right reasons and that it's the few who are not that make the hard, important work of policing more difficult for everyone.

Brown Decl., Ex. 2. Because of the report's principle focus on Watts and his partner, none of the Defendant Police Officers are named in the report.

C.      THE UNDERLYING CONSOLIDATED PROCEEDINGS

Watts' wrongdoing left in its wake dozens of legal proceedings. Indeed, separate and apart from the criminal proceedings against Watts and Mohammed (for which they served time in prison) and from Spalding's civil whistleblower action (which, as mentioned, was settled by the City of Chicago), over seventy individuals brought civil rights claims under Section 1983 against Watts, Mohammed, the City of Chicago, and several individual police officers (the latter of which are referred to as the Defendant Police Officers here). *In re Watts*, No. 19-cv-1717.

The Northern District of Illinois consolidated them for pretrial purposes into what has been captioned the *Watts Coordinated Pretrial Proceedings*. On November 11, 2020, the parties jointly filed a status report representing that none of the dozens of plaintiffs have been deposed, few of the numerous defendants have been deposed, and that document discovery is ongoing for many more months. Joint Status Report, *In re Watts*, Dkt. 162. On December 4, 2020, the court set a fact discovery cut-off of May 31, 2022, and a dispositive motions deadline of December 5, 2022. Minute Entry, *In re Watts*, Dkt. 164. It is in this posture that the Defendant Police Officers issued the subpoena at issue in this matter to CBS News.

D.      THE SUBPOENA

On or about November 5, 2020, the Defendant Police Officers served CBS Broadcasting Inc.[5] at its New York headquarters, the CBS Broadcast Center on 57th Street and Eleventh Avenue. Brown Decl., Ex. 1. That subpoena demanded that CBS News produce "any and all tape or digital footage, including raw, cut, or unedited footage, audio recordings, transcripts,

---

[5] Although the subpoena was properly served on CBS News in New York, where it is headquartered and where the documentary special was produced, CBS News was incorrectly named in the subpoena as "CBS Broadcast Center."

interview notes, photographs, and any other media relating to" the "Whistleblower" episode, "Chicago PD: Breaking the Code of Silence." *Id.* In short, a reasonable reading of the subpoena is that it seeks any and all material that CBS News possesses that relates to the report in question. After seeking an extension to respond or otherwise object to the subpoena, up to and including December 11, 2020, CBS News now brings this miscellaneous action seeking an order quashing the overbroad and premature subpoena for privileged information.

## ARGUMENT

I. **THE SUBPOENA SHOULD BE QUASHED BECAUSE THE DEFENDANT POLICE OFFICERS CANNOT OVERCOME THE REPORTER'S PRIVILEGE RECOGNIZED BY THE SECOND CIRCUIT**

Consistent with decades of circuit precedent, this Court should quash the subpoena to CBS News because the newsgathering material sought is protected from compelled disclosure by the reporter's privilege under the First Amendment. Indeed, courts in this Circuit have long recognized the inherent risks to First Amendment freedoms that would result could a journalist routinely be compelled by court process to disclose newsgathering material. *See*, *e.g.*, *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1998); *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7-8 (2d Cir. 1982) (per curiam); *Baker*, 470 F.2d at 782.[6] As the Second Circuit explained, the privilege, even for non-confidential material, is grounded "in a broader concern for the potential harm to the 'paramount public interest in the maintenance of a vigorous, aggressive and

---

[6] The New York Legislature recognized those same interests when in 1990 it passed the Shield Law, which affords protection to non-confidential information and absolute protection to confidential information. N.Y. Civ. Rights Law § 79-h(c). When Federal Rule of Evidence 503 requires that a court apply the common law reporter's privilege in lieu of the State Shield Law, as here, courts nevertheless rely on decisions applying the Shield Law to inform the analysis under the reporter's privilege. *See Baker*, 470 F.2d at 782 (interpreting reporter's privilege by reference to New York law); *In re Nat. Gas Commodities Litig.*, 235 F.R.D. 241, 244 (S.D.N.Y. 2006) (incorporating statutory definition into the federal privilege); *United States v. Marcos*, 1990 U.S. Dist. LEXIS 6541, at *6-11 (S.D.N.Y. June 1, 1990) (same).

7

independent press capable of participating in robust, unfettered debate over controversial matters.'" *Gonzales*, 194 F.3d at 33 (citation omitted).

There are multiple harms that would stem from the regular and forced disclosure of newsgathering material in response to subpoenas like that at issue here:

1. Requiring a journalist to testify about information collected in the course of gathering the news deters sources who might otherwise be willing to speak to the press. *See, e.g.*, *Gonzales*, 194 F.3d at 35 (recognizing that exposing press files to litigant scrutiny increases the risk that "potential sources [will be] deterred from speaking to the press, or insist[] on remaining anonymous").

2. Permitting routine discovery from reporters would discourage journalists from reporting on matters that are likely to be the subject of litigation. *See, e.g.*, *In re Consumers Union of U.S., Inc.*, 495 F. Supp. 582, 586 (S.D.N.Y. 1980) (forced disclosure of magazine's information would inhibit its "coverage of provocative issues important to the public").

3. Compelled disclosure also creates undesirable incentives "for press entities to clean out files containing potentially valuable information." *Gonzales*, 194 F.3d at 35.

4. Compelled disclosure to private litigants or the government "undermine[s] the public's perception of the press as an independent institution." *Sikelianos v. City of N.Y.*, 2008 U.S. Dist. LEXIS 47560, at *3 (S.D.N.Y. June 18, 2008).

5. And, it "burden[s] the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties," making reporters less effective and news reports less informative. *Gonzales*, 194 F.3d at 35; *see also id.* (recognizing that subpoenas to the press would be "standard operating procedure" without a reporter's privilege).

Those harms are implicated here. *See* Gaynor Decl. ¶ 19; Decl. of Anthony Batson ("Batson Decl.") ¶ 8. To prevent them, the privilege is designed to extend broadly to the protection of the newsgathering process itself, *von Bulow v. von Bulow*, 811 F.2d 136, 142 (2d Cir. 1987) ("the process of newsgathering is a protected right under the First Amendment"), whether or not a

subpoena implicates confidential or non-confidential information gathered by a reporter in pursuit of the news, *Gonzales*, 194 F.3d at 35.

Under the precedent in this Circuit, when a party is seeking non-confidential information protected by the qualified privilege, such as information about the reporting process, a "subpoena must be quashed unless the issuing party demonstrates both (1) 'that the materials at issue are of likely relevance to a significant issue in the case,' and (2) the materials at issue 'are not reasonably obtainable from other available sources.'" *Schoolcraft v. City of N.Y.*, 2014 U.S. Dist. LEXIS 56033, at *5-6 (S.D.N.Y. April 18, 2014) (citing *Gonzales*, 194 F.3d at 36).

Here, the Defendant Police Officers clearly seek information protected by the reporter's privilege, but they cannot meet their burden to overcome that privilege. Therefore, the subpoena should be quashed.

**A.      The Defendant Police Officers Cannot Show That The Newsgathering Information Is Likely Relevant To A "Significant Issue"**

Initially, the subpoena should be quashed because the Defendant Police Officers cannot satisfy their burden to show that the information sought from CBS News is of likely relevance to a "significant issue" in their case. *Gonzales*, 194 F.3d at 36. A generalized showing of materiality and relevance is not sufficient to overcome the privilege; plaintiffs must specifically identify the information sought and show a "particularized" need to obtain it. *Schoolcraft*, 2014 U.S. Dist. LEXIS 56033, at *6; *see also In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 991 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2013) ("*McCray*") (finding insufficient "general claims that the outtakes are likely to contain relevant material"); *New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*, 2014 U.S. Dist. LEXIS 55417, at *9 (S.D.N.Y. 2014) ("*Pension Fund*") (same).

Here, the Defendant Police Officers have not satisfied either prong of the required

9

showing.[7] On the contrary, their subpoena is unmoored to any semblance of need or relevance to proof of a significant aspect of their defenses. They simply seek—without rhyme, without reason—everything that CBS News possesses relating to the report—irrespective if it relates to any elements of the claims underlying the plaintiffs' lawsuits in the underlying litigation or to the Defendant Police Officers' defenses. This is a "classic fishing expedition." *Morelli v. Alters*, 2020 U.S. Dist. LEXIS 207362, at *17 (S.D.N.Y. Nov. 5, 2020). But, as multiple district courts have explained, "a litigant will not be granted 'unfettered access' to the [newsgathering] materials." *McCray*, 991 F. Supp. 2d at 469 (quoting *Sikelianos*, 2008 U.S. Dist. LEXIS 47560, at *3); *cf. Gonzales*, 194 F.3d at 31, 36 (finding relevancy prong satisfied when single outtake sought related to actual conduct at issue in underlying litigation). The Defendant Police Officers simply cannot satisfy this prong of the privilege. For this reason alone, the subpoena should be quashed.

**B.     The Defendant Police Officers Have Not Exhausted
         <u>Alternative Sources For The Information</u>**

Even if the Defendant Police Officers could point to specific newsgathering material possessed by CBS News that was relevant to a significant issue in the case, the subpoena should still be quashed for the independent reason that the Defendant Police Officers have not exhausted other available sources from which the information is reasonably obtainable. To overcome the privilege, they are required to have taken all reasonable steps to uncover the information elsewhere and come up empty-handed. *Gonzalez*, 194 F. 3d at 36. This element requires the Officers first to have made a diligent and thorough attempt "to obtain the information from alternative sources," and the exhaustion of "all other available sources of information is

---

[7] Watts and Mohammed, the two convicted officers, are the only Chicago officers discussed in the "Whistleblower" episode. None of the Defendant Police Officers (who served this subpoena) are named.

10

sometimes required." *Pension Fund*, 2014 U.S. Dist. LEXIS 55417, at *9; *see, e.g.*, *In re NBC*, 79 F.3d 346, 353 (2d Cir. 1996) (where information sought in unbroadcast tapes could be sought through depositions, exhaustion could not be shown); *In re Behar*, 779 F. Supp. 273, 275 (S.D.N.Y. 1991) (before "a reporter's resources can be tapped by subpoena," a party must "demonstrate that other available sources . . . have been exhausted"); *Persky v. Yeshiva Univ.*, 2002 U.S. Dist. LEXIS 23740, at *11-12 (S.D.N.Y. Dec. 10, 2002) (same); *In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 928 F. Supp. 2d 748, 758 (S.D.N.Y. 2013) ("Defendants cannot show unavailability from other sources before deposing Plaintiffs.").[8]

The obligation to pursue reasonably available alternative sources remains even where counsel anticipates that such alternative inquiries will be futile. For example, in *New England Teamsters & Trucking Industries Pension Fund v. New York Times Co.*, this Court upheld a reporter's claim of privilege where a plaintiff's motion for reconsideration of a Tennessee trial court's order upholding a party's evidentiary privilege over the same document was pending in that court. 2014 U.S. Dist. LEXIS 55417; *see also United States v. Burke*, 700 F.2d 70, 77 n.8 (2d Cir. 1983) (anticipated attorney-client privilege objection did not relieve counsel from

---

[8] *See also Petroleum Prods. Antitrust Litig.*, 680 F.2d at 8 (holding that subpoenaing party failed to exhaust alternative sources despite "hundreds of depositions" having been taken were material questions had not been put to those deponents); *Pan Am Corp. v. Delta Air Lines, Inc.*, 161 B.R. 577, 585 (S.D.N.Y. 1993) ("two depositions fall far short of the effort required to show unavailability when a constitutional privilege is sought to be overcome based on necessity."); *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993) ("The caselaw in this area is clear. Where the source is known and can be deposed, the availability of a deposition is an alternative source that must be pursued."); *accord Price v. Time, Inc.*, 416 F.3d 1327, 1347 (11th Cir. 2005) (ordering subpoenaing party to depose three additional individuals prior to deposing media non-party); *Carey v. Hume*, 492 F.2d 631, 630 (D.C. Cir. 1974) (holding that 60 depositions may be appropriate before compelling reporter to testify); *LaRouche v. NBC*, 780 F.2d 1134, 1139 (4th Cir. 1986) (affirming order quashing motion where subpoenaing party "did not exhaust all his non-party depositions" before seeking the information from the media); *Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993) (finding it "too early in the discovery process" to order deposition of reporter where subpoenaing party failed to seek information from obvious alternative source).

deposing non-journalists first). Put simply, a party that has not "worked up a sweat" cannot defeat the privilege. *Pan Am Corp.*, 161 B.R. at 585.

In this case, the Defendant Police Officers are far from having exhausted reasonable sources of information. As the parties stated in their joint discovery status report filed on November 30, there remains "much discovery to be completed, including party depositions and additional document discovery." Joint Status Report, *In re Watts*, Dkt. 162. According to that filing, the Defendant Police Officers have not even deposed the plaintiffs. By their own admission, document discovery is still underway and many of the defendants remain to be deposed as well. What is more, Spalding has not yet been deposed.

The Defendant Police Officers cannot be said to have exhausted alternative sources of information before seeking to rifle through the reporting files of CBS. For this reason alone, the subpoena to CBS News should be quashed.

## II. THE SUBPOENA IS PROPERLY QUASHED AS SEEKING DISCOVERY THAT IS UNNECESSARY, CUMULATIVE AND BURDENSOME

All apart from the issue of privilege, the subpoena is properly quashed because the materials sought are unnecessary to the litigation of the case, and therefore the burden the subpoena imposes cannot be justified. In other words, even apart from the reporter's privilege, "the usual requirements of relevance, need, and limited burdens on the subpoenaed person still apply." *Lee v. DOJ*, 413 F.3d 53, 60 (D.C. Cir. 2005).

Rule 45 directs that courts should quash a non-party subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Whether a subpoena constitutes an "undue burden" depends on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*,

169 F.R.D. 44, 49 (S.D.N.Y. 1996) (citation omitted). Where, as here, a subpoena "sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *Id.* at 50 (citation omitted).

The Defendant Police Officers' unbounded demand for CBS News' newsgathering material is unnecessarily burdensome—especially in light of the current posture of the underlying litigation. Courts in this District do not hesitate to quash similar demands for "any and all" records relating to a matter. *See, e.g.*, *Keebler v. Rath*, 405 F. App'x 517, 520 (2d Cir. 2010) (scope of the request justified quashing subpoena on burden grounds); *Morelli*, 2020 U.S. Dist. LEXIS 207362, at *17 (finding such a subpoena "substantially overbroad" and a "fishing expedition").

The unnecessary burden placed on CBS News here is particularly high. Based on a preliminary review of the materials, CBS News estimates it has 1,350 hours of raw video footage, almost all of it unpublished material. Batson Decl. ¶ 5. Additionally, this voluminous video material, along with other hard copy materials such as any transcripts, photographs, reporter notes, and other newsgathering materials, are held in an offsite storage location that is not immediately accessible. *Id.* ¶ 4. In all, there are estimated to be potentially thousands of pages of materials that could be responsive to this broad subpoena. *Id.* ¶ 5. To collect, review, assemble, and produce the materials in CBS News' possession, would require devoting multiple CBS News employees to reviewing all of this newsgathering material over a matter of weeks, diverting them from their jobs of gathering news and costing the company thousands of dollars in employee time. *Id.* ¶ 6. This would result in substantial and tangible costs for this non-party. *Id.*; Gaynor Decl. ¶¶ 15-18.

13

Moreover, the subpoena is unnecessarily burdensome to non-party CBS News because the Defendant Police Officers have not yet sought the information from parties and other materials witnesses prior to seeking information from CBS News—whose only connection to this matter is that it gathered and reported news of public concern to the public. *See Alcon Vision, LLC v. Allied Vision Grp.,*, 2019 U.S. Dist. LEXIS 152073, at *6-7 (S.D.N.Y. Sept. 6, 2019) (quashing subpoena as an undue burden where information could and should be sought from a party to the litigation); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *see also Bond v. Utreras*, 2006 U.S. Dist. LEXIS 46279, at *11 (N.D. Ill. June 27, 2006) ("a non-party . . . [is] entitled to 'somewhat greater protection,' than would a party be" (citation omitted)). Moreover, once the Defendant Police Officers do so, a subpoena to CBS News might be rendered "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2).

Given the absence of any demonstrable need for CBS News' unpublished materials in the underlying case, the subpoena should be quashed on these grounds too. *See, e.g.*, *Alcon*, 2019 U.S. Dist. LEXIS 152073, at *5-7 (quashing subpoena as duplicative and burdensome); *Morelli*, 2020 U.S. Dist. LEXIS 207362, at *17 (same); *In re Subpoena to Jeffrey Goldberg*, 693 F. Supp. 2d 81, 87 (D.D.C. 2010) (same). The subpoena should, accordingly, be quashed.

## CONCLUSION

For each and all the foregoing reasons, non-party movant CBS Broadcasting Inc. respectfully requests this Court grant in all respects its motion to quash the subpoena.

Dated: New York, New York
       December 11, 2020

Respectfully submitted,

BALLARD SPAHR LLP

By: /s/ *Jay Ward Brown*

Jay Ward Brown
Mara Gassmann (*pro hac vice* forthcoming)
1675 Broadway, 19th Floor
New York, NY 10019
Phone: (212) 850-6119
Fax: (212) 223-1942
brownjay@ballardspahr.com
gassmannm@ballardspahr.com

*Counsel for Non-Party CBS Broadcasting Inc.*